113 N.J. Super. 576 (1971)
274 A.2d 611
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOANNE LAVENDER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1971.
Decided March 2, 1971.
*577 Before Judges GOLDMANN, LEONARD and MOUNTAIN.
Mr. Alfred T. Sanderson argued the cause for appellant.
*578 Mr. Martin F. Caulfield, Gloucester County Prosecutor, argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Defendant was charged in three indictments: bookmaking (N.J.S.A. 2A:112-3), engaging in a lottery business (N.J.S.A. 2A:121-3(a)), and possession of lottery paraphernalia (N.J.S.A. 2A:121-3 (b)). The jury found her guilty on the last-mentioned indictment. She then retracted her former pleas of not guilty to the first two indictments and pleaded guilty. The trial judge sentenced her to the Clinton Reformatory for Women for 1-5 years on the bookmaking indictment and in addition imposed a fine of $1,000, defendant to stand committed until the fine was paid. On the other two indictments she was sentenced to concurrent indeterminate terms at the same institution, not to exceed three years.
Shortly after sentence was imposed the reformatory superintendent wrote the sentencing judge requesting a corrected sentence on the bookmaking charge, calling his attention to the fact that N.J.S.A. 30:4-155 mandates that sentences to the Clinton Reformatory, except for murder or manslaughter, be indeterminate. The judge responded that the bookmaking sentence conformed to N.J.S.A. 2A:112-3, which calls for punishment by a $1,000-$5,000 fine or imprisonment in the State Prison for 1-5 years, or both. He stated that State v. Ammirata, 104 N.J. Super. 304 (App. Div. 1969), and State v. Pallitto, 107 N.J. Super. 96 (App. Div. 1969), were authority for the sentence imposed.
N.J.S.A. 30:4-155 provides in pertinent part:
The several courts in sentencing to the Women's Reformatory shall not fix or limit the duration of the sentence, except as otherwise provided for herein, but the time which the prisoner shall serve in the reformatory or on parole shall not exceed five years, except for the crimes of murder or manslaughter, or the maximum term provided by law for the offense of which the prisoner is convicted and sentenced *579 if such maximum be less than five years; provided, however, that the court, in its discretion, for good cause shown, may impose a sentence greater than five years, but in no case greater than the maximum provided by law, and the commitment shall specify in every case the maximum of the sentence so imposed. * * *
In Ammirata, above, defendant was convicted of unlawful possession of narcotics under N.J.S.A. 24:18-4 and sentenced, pursuant to N.J.S.A. 24:18-47(c)(1), to an indeterminate term in the Reformatory for Males of not less than two years. He appealed on the ground that the reformatory statute, N.J.S.A. 30:4-148 (similar to N.J.S.A. 30:4-155 for these purposes) prohibited a minimum term. The court rejected the argument for the reason that the narcotics sentencing statute (N.J.S.A. 24:18-47) was amended three times between the date of enactment of the reformatory statute (N.J.S.A. 30:4-148) and the date of the offense, and it therefore controlled the disposition of the case. 104 N.J. Super. at 308. Presumably the court's rationale was this: since the Legislature confronted the subject of sentencing in narcotics cases at a time when it was aware of the possible conflict inherent in the reformatory statute, its specific inaction in dealing with this issue indicated, sub silentio, a legislative policy that the mandatory minimum in the narcotics law should supersede the prohibition on minimum sentences in the reformatory statute. This position was merely reaffirmed in Pallitto, 107 N.J. Super., above, at 100.
Defendant here argues that N.J.S.A. 30:4-155, having twice been amended since 1940, the year of the last amendment to the bookmaking statute, N.J.S.A. 2A:112-3, the same logic as underlay the Ammirata decision should apply here, and therefore the sentence is illegal.
In 1940 the bookmaking penalty was changed to provide for either a fine of not less than $1,000 nor more than $5,000 or imprisonment for not less than one nor more than five years, or both. The penalty had previously been in the conjunctive. L. 1940, c. 205, § 1. In 1946 the women's *580 reformatory statute was amended to include a special provision as to manslaughter and murder, L. 1946, c. 312, § 3 (see also, R.S. Cum. Supp. 30:4-155, at 371 (1947)). It was again amended by L. 1951, c. 335, § 3 (see also, R.S. Cum. Supp. 30:4-155, at 197 (1952)). The purpose of the legislation, as set out in the Statement accompanying the bill on introduction, was to limit the duration of any sentence a prisoner had to serve in Clinton to a maximum of five years. However, if the sentencing court felt that a greater maximum sentence was indicated by the facts and circumstances, it might impose such sentence. The Statement continued with the observation that courts, in committing to the reformatory rather than to the State Prison, "have uppermost in mind the rehabilitation of the individual and his eventual return to society better qualified to take his proper place in community life." Further, the introducer of the bill stated that the legislation had the approval of the State Parole Board and of a special committee of judges appointed to study sentencing practices, as "desirable and necessary legislation as disclosed by their extensive experience on the bench."
The legislative pattern is clear: sentences to the Clinton Reformatory were to continue indeterminate, and in no case to exceed five years except in the case of homicide of where the maximum term fixed by statute for the offense was less than five years; however, the sentencing court, in its discretion and for good cause shown, might impose a sentence greater than five years, but in no case greater than the maximum provided by law. Accordingly, we hold that the reformatory law, N.J.S.A. 30:4-155, dictates that the no-minimum rule apply in this case. It must be assumed that the Legislature was fully informed as to the sentence fixed by the bookmaking statute (last amended in 1940), as well as that provided in any statute not amended after 1946, when it passed L. 1946, c. 312 and L. 1951, c. 335.
The sentence imposed by the court for the bookmaking offense must therefore be vacated.
*581 (We note that in sentencing defendant to concurrent indeterminate terms for the other two offenses the judge directed that they were not to exceed three years. No maximum should have been mentioned; N.J.S.A. 30:4-155 provides the necessary limitation by stating that the term to be served shall not exceed the maximum fixed by law for the particular offense. In this case N.J.S.A. 2A:121-3(a) and (b) denote the lottery law violations as misdemeanors, which carry a maximum term of three years. N.J.S.A. 2A:85-7.)
At the time the trial judge imposed sentence he had before him a presentence report indicating that defendant had no prior record, was suffering from an ulcer, had three children, ages 9, 6 and 3, and incarceration would be a hardship on her family. The senior probation officer had recommended leniency. We were informed at oral argument that defendant, who has been out on bail, is now pregnant.
The three indictments returned by the grand jury all stem from a single raid. Aside from the bookmaking sentence, defendant will be required to serve concurrent indeterminate terms at Clinton not exceeding three years. In our view, the sentences for engaging in a lottery business and possession of lottery paraphernalia are sufficient punishment.
In the exercise of our authority to revise a sentence, defendant will serve an indeterminate term at Clinton, all sentences to run concurrently and for the same period of time. The matter is remanded to the County Court for the entry of an accordant judgment of conviction.